UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO.:11-23415-CIV-UNGARO/SIMONTON

CONSUELO ALFONSO, as
Personal Representative of Estate of
ANTHONY ARIAS,

                        Plaintiff,

vs.

CITY of HIALEAH, FLORIDA
a governmental entity,
ALEXIS BARRIOS, individually,
JOHN DOE, unknown others, including Supervisors

                        Defendants.           /

AMENDED COMPLAINT

Plaintiff, CONSUELO ALFONSO ("ALFONSO"), as personal representative of the

ESTATE of ANTHONY ARIAS ("ESTATE"), sues the Defendants, CITY of HIALEAH,

FLORIDA ("CITY"), a governmental entity, and ALEXIS BARRIOS ("BARRIOS"),

individually,[1] and alleges as follows:

JURISDICTION

1.      This is an action for damages within this Court's original jurisdiction for damages for

        civil action arising under the U.S. Constitution and federal law, and pendant state claims.

---

[1] A number of other City of Hialeah Officers participated in the wrongful course of conduct giving rise to the claims in this complaint, including certain supervisors, Plaintiff reserves the right to add all those individuals as additional defendants upon learning their identities.

1

*CASE NO.:11-23415-CIV-UNGARO/SIMONTON*

## NATURE OF THIS ACTION

2.     This is an action for:

    a.     Wrongful Death as provided by §768.16  Fla. Stat. against BARRIOS,

        individually (Count I);

    b.     Wrongful Death as provided by §768.16  Fla. Stat. against CITY and BARRIOS

        (Count II);

    c.     Wrongful Death as provided by §768.16  Fla. Stat. against CITY -Negligence

        (Count III);

    d.     Excessive use of Force under Title 42, United States Code §1983 for civil rights

        violations against CITY and BARRIOS (Count IV), and

    e.     Violation of Fourth Amendment under Title 42, United States Code §1983 for

        civil rights violations against CITY and BARRIOS (Count V).

## PARTIES

3.     ALFONSO is a citizen of the United States, a resident of Miami-Dade County, Florida,

and sui juris.

4.     ALFONSO is the Personal Representative of the ESTATE of ANTHONY ARIAS.

5.     ALFONSO is the mother of Anthony Arias ("ARIAS") and brings this action for the

benefit of the ESTATE and the survivors, pursuant to §768.18, Fla. Stat., which are

herself and Robert Angel Arias, the father of ARIAS.  There are no other known

survivors.

6.     ARIAS whose date of birth is October 14, 1983, was killed on August 19, 2009 by

BARRIOS.

7.      CITY is a governmental entity in Miami-Dade County, Florida, existing pursuant to the laws of the State of Florida.

8.      CITY, for the protection of its citizens and the enforcement of its laws and the laws of the State of Florida, operates a Police Department.

9.      BARRIOS is a resident of Miami-Dade County, Florida, and sui juris.

10.      CITY employed  BARRIOS as a police officer.

11.      On August 19, 2009, BARRIOS was employed by CITY as a Police officer, purporting to act within the course and scope of his employment and under color of law.

12.      At the relevant time, BARRIOS participated or engaged in a course of conduct which he knew, or reasonably should have known, was intended to and did result in abridgment and deprivation of ARIAS' rights and privileges, as secured under the laws of the State of Florida and the constitution of the United States.

13.      At all material times, CITY had a custom, practice, and policy of encouraging or fostering the use of excessive force, and BARRIOS acted in conformity with such custom, practice, and policy.

## GENERAL ALLEGATIONS

14.      On the evening of August 19, 2009,  BARRIOS, while in the course and scope of his employment with CITY, allegedly responded to a suspected burglary at an unoccupied Boost Mobil Cell Phone store at or about Palm Avenue and East 5th Street, Hialeah, Florida.

15.     On August 19, 2009, BARRIOS arrived at the above-referenced location and allegedly

        encountered ARIAS.

16.     At the above time and place, ARIAS was not armed with, nor in possession of any

        weapon whatsoever, nor did he pose any threat of harm or injury to anyone.

17.     After coming in contact with ARIAS, BARRIOS allegedly drew his firearm and, based

        upon physical evidence, pointed and fired his firearm upon ARIAS.

18.     BARRIOS' life was not threatened, nor was he in any peril of imminent physical harm of

        any kind.

19.     There were no other persons present, or in the immediate vicinity, and ARIAS did not

        pose a treat or peril of physical harm to anyone.

20.     BARRIOS, and others then acting in concert, realizing that ARIAS was not armed and

        that BARRIOS had no justification for using deadly force against ARIAS, undertook a

        course of conduct intended to manipulate the physical evidence and undermine the

        investigation in an effort to conceal the improper conduct of BARRIOS, and his

        unprovoked and unjustifiable use of deadly force.

21.     At no time did BARRIOS have any reason or legal justification to use deadly force and

        shoot ARIAS.

22.     At all material times, the conduct of BARRIOS, and others, including supervisors,

        exceeded all permissible bounds of reasonable police action, was excessive, and in

        violation of the rights of ARIAS under State and Federal law to be free from excessive

        use of force.

23.    BARRIOS, acting in concert with others, including supervisors, undertook a course of
       conduct to impede and frustrate the investigation into the shooting, in an effort to protect
       BARRIOS and CITY.

24.    BARRIOS, and others, including investigators and supervisors on the scene, knew or
       should have known, that:

       a.    BARRIOS had acted wrongfully, if not illegally in drawing his firearm, pointing
             it, and firing his firearm at ARIAS;

       b.    There was no justification for BARRIOS to shoot or use deadly force against
             ARIAS, and

       c.    Their manipulation of relevant evidence, and their failure to complete accurate
             reports and complete the investigation of the shooting was a violation of ARIAS'
             rights.

25.    At all material times, any reasonably competent police officer, homicide investigator, or
       supervisor on the scene, having a reasonable degree of training and expertise should have
       known and readily realized from the physical evidence, that there was no constitutional or
       legally justifiable basis for BARRIOS to have used deadly force on ARIAS.

26.    At all material times, any reasonably competent homicide investigator and supervisory
       police officer, such as those called to the scene on the relevant date, having a reasonable
       degree of training and expertise should have known that there was no constitutional or
       legally justifiable basis to shoot or use deadly force against ARIAS, and that as the
       investigators and supervisors designated to investigate the shooting, they had a duty to

perform a proper investigation and not manipulate evidence and otherwise protect

ARIAS' rights.

27.   At all material times, the conduct of BARRIOS exceeded all permissible bounds of

reasonable police action, was excessive, and in violation of ARIAS rights to be free from

excessive use of force, specifically deadly force, and to be free from unreasonable

seizures, under the due process clauses of the United States Constitution and the Florida

Constitution.

28.   BARRIOS, and others, including supervisors, appreciating that there was no justification

for BARRIOS' actions, wrote misleading and deceptive reports, in a concerted effort to

protect BARRIOS from civil and criminal liability.

29.   CITY, through supervisory personnel, failed to question the apparent inconsistencies and

deception or falsities in reports generated as part of the investigation of the incident,

inconsistencies and falsities which were apparent from the physical evidence.

30.   CITY has an entrenched policy, practice, and procedure which has fostered an

organizational culture, which includes avoiding proper inquiry into, and proper scrutiny

of any police action which involves use of force.

31.   This  policy, practice, and procedure fosters the use of excessive force by the CITY's

police officers.

32.   At all material times, CITY permitted and fostered an organizational culture of permitting

the use of excessive force by its police officers, an organizational culture which was

fostered by the lack of proper investigation of incidents involving use of force and

enforcement of established use of force policies.

33.   At all material times, any reasonably competent police officer having a reasonable degree

of training and expertise should have known that there was no constitutional or legally

justifiable basis to use deadly force to seize ARIAS.

34.   BARRIOS was acting within the course and scope of his employment with CITY, when

he used unnecessary and excessive force against ARIAS.

35.   At all material times, the actions of BARRIOS were in furtherance of the interests of the

CITY, and consistent with the de facto organizational policy and culture of using

excessive and deadly force against suspects without regard to clearly established state and

federal law, which proscribes the use of deadly force to apprehend or seize a subject who

has not committed a crime of violence and who does not pose an imminent peril to the

safety or physical well being of the officer or others.

36.   At all material times, BARRIOS wrongfully, improperly, and unlawfully used excessive

force against ARIAS when he used, handled, or fired his weapon.

37.   As a direct and proximate result of the acts and omissions of Defendants, BARRIOS,

CITY, and others, Plaintiff, ALFONSO, incurred medical expenses, funeral expenses,

and other damages to the ESTATE, and ALFONSO and Robert Angel Arias, as

survivors,  have suffered mental pain and suffering in the past and in the future, and have

also been deprived of the loss of support and services of their son, ARIAS.

38.   All conditions precedent to bring this action have been satisfied, have accrued or have

been waived.  Specifically, ESTATE and ALFONSO have complied with the

requirements of 768.28, Fla. Stat., (waiver of sovereign immunity), by timely serving a

Notice of Claim on CITY and the Florida Department of Financial Services.

**COUNT I**
**WRONGFUL DEATH**
**WILLFUL WANTON ACTS AGAINST BARRIOS**

39.    Plaintiff,  ALFONSO, re-alleges paragraphs 1 through 38.

40.    This count is in the alternative as permitted under Fed. R. Civ. P. 8, and within the

purview of *McGhee v. Volusia County,* 679 So. 2d 729 (Fla. 1996).

41.    On August 19, 2009, BARRIOS, without any legal or justifiable basis to do so, used

deadly force shooting and causing the death of ARIAS.

42.    BARRIOS intended to cause injury, and did cause the death of ARIAS, without any right

or pretense of right to do so.

43.    BARRIOS  was acting with color of authority during the course and scope of his

employment with CITY, but was motivated by malice and ill will, when he forcibly, using

excessive and unnecessary force, shoot and killed ARIAS.

44.    At all material times, BARRIOS, wrongfully and unlawfully used excessive force in

effectuating the shooting at and killing ARIAS.

45.    As a direct and proximate result of BARRIOS's actions, ARIAS died and ALFONSO and

ESTATE have sustained damages, in the past, and will in the future suffer the following

damages:

a.    Medical expenses;

b.    Funeral expenses;

c.      Loss of support and services;

d.      Mental pain and suffering, and

e.      Loss of earnings and prospective net accumulations.

WHEREFORE, Plaintiff, ALFONSO, demand judgment against BARRIOS and others

for compensatory damages, with interest, as permitted by the Florida Wrongful Death Act, costs

of this action, and any other relief this Court deems just and proper, and **DEMANDS TRIAL**

**BY JURY** on all issues so triable.

## COUNT II
## WRONGFUL DEATH
## AGAINST CITY AND BARRIOS

46.    Plaintiff, ALONSO, re-alleges paragraphs 1 through 38.

47.    BARRIOS, and others were acting within the course and scope of their employment with

CITY, when they used unnecessary force, and forcibly, and without probable cause or

legal justification to do so, shot and killed ANTHONY ARIAS.

48.    At all material times, BARRIOS, and others, while acting in the course and scope of their

employment, wrongfully, unlawfully, and without any justification caused the death of

ANTHONY ARIAS.

49.    At all material times, the actions of BARRIOS, and others, were within the course and

scope of their employment as police officers and in furtherance of the interests of the

CITY.

50.    The death of ARIAS was without provocation or justification.

9

51.     As a direct and proximate result, ALFONSO and ESTATE suffered:

    a.      emotional distress, pain, and suffering;

    b.      public humiliation and embarrassment;

    c.      damage to her son's good name and reputation;

    d.      loss of personal liberty, and

    e.      sustained other general damages, including attorneys fees and legal expenses

            associated with his arrest.

WHEREFORE, Plaintiff, ALFONSO, demand judgment against the Defendants, CITY

and BARRIOS, and others for compensatory damages, costs of this action, and such other relief

as this Court deems just and equitable, and **DEMANDS TRIAL BY JURY** on all issues so

triable.

**COUNT III**
**WRONGFUL DEATH**
**NEGLIGENCE AGAINST CITY**

52.     Plaintiff, ALFONSO, re-alleges paragraphs 1 through 38.

53.     At all material times, CITY was under a duty to properly train and supervise its officers,

        including BARRIOS, which duty included one or more of the following:

    a.      having an established and clearly defined use of force policy limiting use of force,

            specifically use of a firearm and deadly force, only to those circumstances or

            situations in which the subject committed a violent felony and posed an imminent

            threat to the safety of the officer or others, and training its officers and enforcing

            adherence to such policy and training;

b.      having an established and clearly defined use of force policy proscribing the use of deadly force, in circumstances or situations in which there is only passive resistance to police conduct or official action without any accompanying active physical threat to the safety of the officer or others, and training its officers and enforcing adherence to such policy and training;

c.      having an established investigative and disciplinary policy and practice to fully or properly investigate use of force, specifically use of a firearm or deadly force, in those situations in which there is only passive resistance to police conduct without any accompanying active physical threat to the safety of the officer or others, including those situations in which the use of force is in response to an arrest for charges which do not involve any violence or threat to the physical safety of the officer or citizen.

54.    At all material times, CITY owed ARIAS a duty to adequately and properly train and supervise its officers as alleged in the preceding paragraph.

55.    At all material times, CITY breached its duty by failing to adequately train and supervise, in one or more of the following respects:

a.      failing to have an established and clearly defined use of force policy limiting use of a firearm or deadly force only to those circumstances or situations in which the subject committed a violent felony and posed an imminent threat to the safety of the officer or others, or not training its officers or not enforcing adherence to such policy and training;

b. failing to have established and clearly defined use of force policy proscribing the use of deadly force, in circumstances or situations in which there is only passive resistance to police conduct or official action without any accompanying active physical threat to the safety of the officer or others, and training its officers and enforcing adherence to such policy and training;

c. failing to have an established investigative and disciplinary policy and practice to fully or properly investigate use of force, specifically use of a firearm or deadly force, in those situations in which there is only passive resistance to police conduct without any accompanying active physical threat to the safety of the officer or others, including those situations in which the use of force is noted to have been in response to an arrest for such charges as "obstruction," "interfering," "resisting without violence," or other similar acts which denote only verbal passive conduct on the part of any citizen or subject, or not actually enforcing or adhering to such policy or practice.

56. At all material times, CITY knew or should have known that its officers were making questionable, illegal, and unconstitutional use of force, using excessive or unnecessary force in making arrests, due in part to inadequate training and supervision, which fostered an organizational culture of disregard for the rights of citizens, and the constitutional and legal proscription against use of excessive force, including deadly force.

57. At all material times, CITY knew or should have known that its officers, including BARRIOS, as a result of the organizational culture fostered by the lack of proper training,

supervision, and discipline, had or employed questionable practices, particularly in the

authorship of misleading reports, which contained material omissions, concealed,

suppressed, omitted, and mis-characterized material evidence of which they had

knowledge, often times to justify excessive use of force.

58.     At all material times, CITY had a duty to properly address the questionable practices by

its officers, particularly as to BARRIOS, by implementing and enforcing a proper policy

or practice of training and supervision of its officers, but failed to do so, as evidenced by

the failure to take any proper action in scrutinizing the creative and evidently false and

irreconcilable reports written as to ARIAS.

WHEREFORE, Plaintiff, ALFONSO, demands judgment against CITY, for

compensatory damages, costs of this action, and such other relief as this Court deems just and

equitable, and **DEMANDS TRIAL BY JURY** on all issues so triable.

### COUNT IV
### VIOLATION OF 42 U.S.C. §1983
### VIOLATION OF FOURTH AMENDMENT - EXCESSIVE USE OF FORCE
### AGAINST CITY AND BARRIOS

59.     Plaintiff, ALFONSO, re-alleges paragraphs 1 through 38.

60.     At all material times, ARIAS had a constitutionally protected right to be free from the use

of excessive force without justification.

61.     At no time did BARRIOS have any reasonable or articulable justification which would

support the use of excessive force against ARIAS.

62.     On August 19, 2009, notwithstanding having no reasonable or articulable justification for

excessive use of force, BARRIOS used deadly force against ARIAS, who was not armed, had no weapon, had not committed any crime or offense of violence, did not pose a threat of imminent physical harm to the safety of the officer or others.

63.   At all material times, it would have been readily apparent to a reasonably competent officer, having due regard for ARIAS' constitutional rights, that the use of physical force employed against ARIAS, was unjustified and was in violation of clearly established law.

64.   At all material times, any reasonably competent officer having a reasonable degree of training and expertise, should have known that there was no constitutional or legally justifiable basis to use excessive or deadly force against ARIAS.

65.   At all material times, it was a violation of clearly established law and of ARIAS' clearly established constitutional right to be free from the unreasonable and unjustifiable use of excessive force and to be free from the use of deadly force by BARRIOS.

66.   At all material times, any reasonably prudent and competent law enforcement officer with adequate training should have known that the force being used against ARIAS was excessive, improper, and, under clearly established law, likely to result in the violation of the constitutional rights of ARIAS.

67.   CITY further showed a callous and deliberate indifference in investigating and disciplining officers who, like BARRIOS, used excessive force without justification.

68.   This callous and deliberate indifference fostered an organizational culture and de facto policy of using excessive force to apprehend persons suspected of having committed a crime.

69.     BARRIOS acted consistent with CITY's procedures and de facto policy of using

excessive force.

70.     As a direct and proximate cause of CITY's callous indifference in adequately training and

supervising its officers to respect the constitutional rights of its citizens, and failing to

discipline those that commit such violations, ARIAS suffered damages, leading to his

death.

WHEREFORE, the Plaintiff, ALFONSO, demands judgment against the Defendants,

CITY and BARRIOS, compensatory damages, exemplary damages, prejudgement interest,

attorneys' fees, costs of this action, and such other relief as is available pursuant to 42 U.S.C.

§1983, including attorneys fees pursuant to 42 U.S.C. §1988, and such other relief as this Court

deems just and equitable, and **DEMANDS TRIAL BY JURY** on all issues so triable.

**COUNT V**
**VIOLATION OF 42 U.S.C. §1983**
**VIOLATION OF FOURTH AMENDMENT**
**AGAINST CITY AND BARRIOS**

71.     Plaintiff, ALFONSO, re-alleges paragraphs 1 through 38.

72.      At all material times, any reasonably competent officer having a reasonable degree of

training and due regard for the legal and constitutional limits on use of force, specifically

deadly force, should have known that there was no constitutional or legally justifiable

basis to use deadly force against ARIAS.

73.     At all material times, it was a clearly established violation of ARIAS' constitutional right

to be free from use of excessive force, specifically deadly force, when ARIAS had not

committed any crime of violence and ARIAS did not pose an imminent threat to the

safety of the officer or anyone else.

74.     At all material times, BARRIOS knew, or should have known, that it was a violation of

clearly established Florida law, in conformity with clearly established constitutional law,

to use deadly force against ARIAS.

75.     At all material times, CITY concealed, suppressed, omitted and mis-characterized

material facts/evidence which they had knowledge, in violation of ARIAS' rights of due

process.

76.     At all material times, investigators for the CITY did knowingly, or with reckless

disregard for the truth, prepare, caused to be prepared, or participated in the preparation

of intentionally misleading reports to support the illegal and  unconstitutional use of

deadly force against ARIAS.

77.     At all material times, it would have been readily apparent to any reasonably competent

and trained police officer, having due regard for ARIAS' constitutional rights, that the use

of physical force, specifically deadly force, employed against ARIAS, who was not

offering any physical threat or resistance and did not commit any crime of violence and

did not pose any threat to anyone, was unjustified and was in violation of clearly

established law and ARIAS' constitutional rights.

78.     At all material times, any reasonably competent law enforcement officer with adequate

training should have known that the actions being taken in regards to the use of deadly

force against ARIAS was improper, unconstitutional, and likely to result in the violation

of the constitutional rights of ARIAS.

79.     No reasonably prudent and properly trained law enforcement officer, having due regard

        for the rights of the citizens of their community, would have acted in the manner that

        BARRIOS acted.

80.     As a direct and proximate result of the wrongful conduct of BARRIOS, the constitutional

        rights of ARIAS were violated and abridged, and ARIAS suffered death, and ALFONSO

        and ESTATE sustained other damages as set forth above.

81.     At all material times, CITY was under a constitutional obligation or duty to adequately

        and properly train and supervise its officers, which duty included;

        a.      having an established training program encompassing training on the legal and

                constitutional parameters of the use of force, specifically deadly force, and the

                proper level of restraint or response to conduct, which is not accompanied by

                physical threat of imminent violence to the safety of the officer or others, and

                actually training its officers and enforcing adherence to such training or policy;

                and

        b.      having an established investigative and disciplinary policy and practice to fully or

                properly investigate violations of constitutional rights by its officers, specifically

                the use of excessive or use of force, in those situations in which there is only

                passive resistance to police conduct or official action without any accompanying

                active physical resistance or threat to the safety of the officer or others, including

                those situations in which the use of force is noted to have been in response to an

arrest for such charges as "obstruction," "interfering," "resisting without

violence," or other similar acts which denote only verbal passive conduct on the

part of any citizen.

82.    At all material times, CITY showed a deliberate and callous indifference in training,

supervising, and disciplining its officers, as generally alleged in the preceding paragraph,

by, among other things, failing to have, maintain, or administer a policy, practice, or

procedure of training and supervising its officers, including failing to adhere to or

administer proper discipline to addresses or correct conduct which violated or evidenced

callous indifference for the constitutional rights of its citizens.

83.    Specifically, CITY was aware that its lack training, supervision, and discipline fostered

an organizational culture pursuant to which its officers did not respect and violated the

constitutional rights of citizens, used excessive force, made unconstitutional and illegal

arrests, and frequently retaliated against citizens by using excessive force.  Thus, CITY

failed to maintain and administer a proper system of training, supervision, and discipline

to address the conduct of its officers which violated or evidenced callous indifference for

the constitutional rights of its citizens.

84.    BARRIOS acted in conformity with CITY policy and procedure despite the fact that any

reasonable officer would have known that his actions, both before and after shooting

ARIAS, were violative of ARIAS' constitutional rights.

85.    CITY further showed a callous and deliberate indifference in investigating and

disciplining officers who, like BARRIOS, engaged in "creative" report writing and

otherwise authored reports which were false and misleading.

86.     As a direct and proximate cause of CITY's callous indifference in adequately training and supervising its officers to respect the constitutional rights of its citizens, and failing to discipline those that commit such violations, ALFONSO and ESTATE suffered damages.

WHEREFORE, the Plaintiff, ALFONSO, demands judgment against the Defendants, CITY and BARRIOS for compensatory damages, exemplary damages, prejudgement interest, attorneys' fees, costs of this action, and such other relief as is available pursuant to 42 U.S.C. §1983, including attorneys fees pursuant to 42 U.S.C. §1988, and such other relief as this Court deems just and equitable, and **DEMANDS TRIAL BY JURY** on all issues so triable.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been sent via CM/ECF on this   17th   day of November, 2011 to Alan E. Krueger, Esq., City of Hialeah City Attorney's Office, 501 Palm Avenue, Hialeah, Florida 33011, Devang Desai, Esq., Gaebe, Mullen, Antonelli & DiMatteo, 420 South Dixie Highway, 3rd Floor, Coral Gables, Florida 33146, and Edward A. Martinez, Esq., The Martinez Law Group, P.A., 301 Almeria Avenue, Suite 260, Coral Gables, Florida 33134-5835.

*/s/ Jose M. Herrera /s/*
**JOSE M. HERRERA, ESQ.**
**Florida Bar No.: 612618**
**JOSE M. HERRERA, P.A.**
**2350 Coral Way,  Suite 201**
**Miami,  Florida 33145**
**Tel:  (305) 445-1100**
**Fax:  (305) 221-8805**